**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.  10-cv-02381-MSK-KLM

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

　　　Plaintiff,

MARIA PORTILLO, aka MARIA DE JESUS RAMIREZ,

　　　Plaintiff-Intervenor,

v.

THE SPUD SELLER, INC.

　　　Defendant.

_____

**DEFENDANT SPUD SELLER, INC.'S MOTION FOR SUMMARY JUDGMENT**
_____

　　　Defendant, The Spud Seller Inc. ("Defendant" or "Spud Seller"), by its attorneys, Daniel R. Satriana, Jr. and Matthew Y. Biscan, of Clisham, Satriana & Biscan, LLC, and pursuant to Fed. R. Civ. P. 56 moves for summary judgment on the Plaintiff's Amended Complaint (#5) ("AC") and on the Plaintiff-Intervenor's Complaint (#6-1) ("C").

## INTRODUCTION

　　　This Equal Employment Opportunity Commission ("EEOC") enforcement action arises out of a charge filed with the EEOC by Maria Portillo ("Portillo").  As alleged by Portillo, in late 2007 a floor foreman employed by Spud Seller (a wholesale potato company located in Monte Vista Colorado), Mauricio Gaytan ("Gaytan"), made sexual remarks to her, which culminated in his physically obstructing her departure and

1

hugging her as she was leaving the premises of Spud Seller.  He attempted to hold her and kiss her.  AC, paras. 8, 13, 14, 17, and 18.  An investigation of the alleged conduct was undertaken by Spud Seller.  Thereafter Portillo left the employment of Spud Seller and filed her charge with the EEOC.  During the investigation by the EEOC, additional former female employees of Spud Seller were identified as members of a class of employees of Spud Seller who allege harassment by Gaytan and this enforcement action followed.

The allegations against Gaytan are varied and range in employment based circumstances from inappropriate sexual comments, to sharing inappropriate sexual jokes and texts, to Portillo's claim of unwanted physical contact, and Tina Reyes' ("Reyes") claim that Gaytan exposed himself.  Gaytan denies the vast majority of the allegations of Portillo and the class members identified by the EEOC.  But for purposes of this motion only, Defendant assumes that Gaytan's conduce occurred as alleged, consistent with construing the facts in the light most favorable to the non-moving party under Fed.R.Civ.P. 56.

As demonstrated by the citations to the record herein, it is undisputed that every member of the class relied upon by the EEOC in this action was informed of the anti-sexual harassment policies of Spud Seller and that Spud Seller educated its work force about those policies and enforced them.  It is undisputed that on the two occasions when Portillo and Reyes made complaints about Gaytan's conduct Spud Seller investigated and acted upon those complaints.  And it is undisputed that the conduct alleged by Portillo and Reyes ceased after Spud Seller's action.  Finally, it is undisputed

that six of the remaining class members failed to take advantage of reasonable preventative or corrective opportunities made available by Spud Seller.

## CLAIMS AND DEFENSES UPON WHICH JUDGMENT IS SOUGHT

**A.    Defendant is entitled to Summary Judgment on Plaintiff's Claim for Relief Sex Harassment/Hostile Work Environment – 42 U.S.C. §§2000e-2(a) and 20000e-5(f)(1) based upon the undisputed facts underlying the complaint of identified class member Tina Reyes**

### 1.    Burden of proof and elements

To establish a hostile work environment claim, Plaintiff must prove that:

a.    she was discriminated against because of her sex;

b.    that the discrimination was sufficiently severe or pervasive such that it altered the terms or conditions of her employment; and

c.    created an abusive working environment.

*Pinkerton v. Colo. Dept. of Transportation,* 563 F.3d 1052,1058 (10th Cir. 2009).

In order to survive summary judgment with respect to a hostile work environment claim "the record must support both an inference of a hostile work environment and a basis for employer liability."  *Faragalla v. Douglas Cnty. Sch. Dist.*, 411 F.App'x 140, 154 (10th Cir. 2011) (citing *Ford v. West*, 222 F.3d 767, 775 (10th Cir. 2000).

"Employers are not automatically liable under Title VII for the conduct of employees that create a hostile work environment."  *Tademy v. Union Pacific Corp.*, 614 F.3d 1132, 1139 (10th Cir. 2008).  Employers are liable for a hostile work environment when they condone or tolerate the creation of such an environment.  *Id.*  Liability is governed by agency principles:

a.      negligence theory, under which the employer fails to remedy a hostile work environment it knew or should have known about;

b.      actual authority theory, under which an employee harasses another employee within the scope of his employment; or

c.      apparent authority theory under which the harassing employee acts with apparent authority from the employer.

*Id.*

An employer is not strictly liable for all harassment of which it actually or constructively knew. It may discharge its obligation by taking appropriate remedial or preventative action.  *Meritor Sav. Bank, F.S.B. v. Vinson*, 477 U.S. 57, 72, 106 S.Ct. 2399, 91 L.Ed. 2d 49 (1986).

Employers have been found to have acted reasonably as a matter of law when they adopted valid sexual harassment policies, distributed those policies to employees via employee handbooks, and either provided no sexual harassment training or provided training only to managers.  *Helm v. Kansas*, 656 F.3d 1277, 1289 (10th Cir. 2011).

The 10th Circuit has determined that "[w]hether an employer's remedial and preventative action [is] reasonably calculated to end the harassment" is evidenced by a stoppage of the harassment after the employer's response.  *Adler v. Wal-Mart Stores, Inc.*, 144 F. 3d 664, 676 (10th Cir. 1998).  "The most significant immediate measure an employer can take in response to a sexual harassment complaint is to launch a prompt investigation to determine whether the complaint is justified."  *Swenson v. Potter,* 271

4

F.3d 1184, 1193 (9th Cir. 2001).   The hallmark of reasonable corrective action is a prompt investigation of alleged misconduct.   See *Cerros v. Steel Techs., Inc.,* 398 F.3d 944, 954 (7th Cir. 2007) and *Helm,* 656 F.3d at 1289. Employer responses that have been held reasonable have included: prompt investigation of the allegations, proactive solicitation of complaints, scheduling changes and transfers, oral or written warnings to refrain from harassing conduct, and warnings that future misconduct could result in progressive discipline including termination.   *Adler v. Wal-Mart Stores, Inc.*, 144 F. 3d at 676.

      2.   <u>Plaintiff cannot prove a basis for employer liability because Spud Seller discharged its obligations to Tina Reyes by taking appropriate preventative and remedial action in response to her complaint of sexual harassment.</u>

The following material facts are undisputed:

i.    Spud Seller had in place from February 18, 1999 to March 30, 2008 an Employee Handbook ("Handbook") that contained on page 3, Section III, its policy on sexual harassment.  Exhibit 1 (SS 1 – 3 and 28); Defendant's Responses to Plaintiff's First Set of Requests for Admissions ("RPRA") No. 19, Exhibit 1A.

ii.    Spud Seller had in place from March 31, 2008 a Handbook that contained on page 3, Section III, its policy on sexual harassment.  Exhibit 2 (SS 170 – 172 and 189); RPRA No. 20, Exhibit 1A.

iii.    Spud Seller's sexual harassment policy expressly prohibits sexual harassment, describes sexual harassment (including a 'hostile' environment), directs employees to bring sexual harassment to the attention of several people in management depending upon their level of comfort in discussing the harassment, and

advises that complaints will be investigated and, if warranted, discipline will be meted out.  Exhibits 1 & 2.

      iv.    Reyes admits to starting work at Spud Seller "probably" in 2002. Deposition of Reyes, Exhibit 3, p. 59, ll. 19 – 24.

      v.    Reyes received and read the older version of the Handbook.  Exhibit 3, p. 44, l. 21 – p. 45, l. 17.

      vi.    On September 4, 2002, Reyes signed a Compliance Agreement indicating that she had received, read, and understood Spud Seller's standards of conduct. Exhibit 4 (SS115); Exhibit 3, p. 44, ll. 11 – 20.

      vii.    Reyes thinks that sexual harassment came up at employee meetings and that in at least one meeting she recalls being told that "if we didn't feel comfortable we could go to Jennie."  Exhibit 3, p. 144, ll. 17 - 145, l. 8.

      viii.    Reyes complained to Spud Seller that Gaytan exposed his penis to her the day after she alleged that occurred.  Exhibit 3, p. 94, ll. 5 – 13.  She reported it to Dan Hazard ("D. Hazard"), telling him that she needed a meeting to report sexual harassment.  D. Hazard told her that he would set up the meeting right away and he did. Exhibit 3, p. 94, ll. 14 – 22.

      ix.    D. Hazard, Jennie Hazard ("J. Hazard"), Gaytan, Reyes, and Reyes' cousin Willy Gallegos were at the meeting.  Exhibit 3, p. 94, l. 23 – p. 95, l. 1.

      x.    Reyes does not recall telling D. Hazard of, or bringing up at the meeting, any conduct of Gaytan other than his exposing his penis to her, "back popping", and

conduct that had occurred at a previous employer, Wright Brothers.  Exhibit 3, p. 95 l. 2 – p. 99, l. 6.

xi.     The meeting called by D. Hazard was memorialized in memorandum form by Spud Seller and reflects that Gaytan denied the allegations and that there was additional history of inappropriate interactions between Reyes and Gaytan in the manner of comments and sexual innuendo and "back popping".  Both were advised that only work related behavior and professional behavior should occur or termination would result.  Exhibit 5 (SS 649).

xii.    Gaytan never exposed himself to Reyes again.  Exhibit 3, p. 93, ll. 8 – 11 and p 104, ll. 21 – 24.

xiii.   After the meeting called by D. Hazard, Gaytan went out of his way to avoid Reyes and Reyes was told that other supervisors would tell her of things she needed to know.  Exhibit 3, p. 105, ll. 9 – 20.

xiv.    After the meeting called by D. Hazard Reyes never again complained about sexual harassment at Spud Seller, and Reyes does not think she was ever sexually harassed at Spud Seller again after Gaytan exposed himself to her.  Exhibit 3, p. 106, ll. 14 – 22.

xv.     D. Hazard and J. Hazard had another meeting with Reyes on January 25, 2005, memorialized in a memorandum of that date which records, among other things, that Reyes was specifically asked if she had any new issues with Gaytan and that Reyes stated that she had no new issues with Gaytan.  Exhibit 6 (SS 295).  Reyes signed the memorandum after reading it and does not disagree with the observations

regarding Gaytan as recorded in that memorandum.  Exhibit 3, p. 164, l. 23 – p. 166, l. 15.

xvi.   Reyes left the employ of Spud Seller in September of 2005 because of the need to deal with her mother's death.  Exhibit 7 (SS 146); Exhibit 3, p. 168, l. 14 – p. 170, l. 6.

Spud Seller's conduct with respect to Reyes was reasonable as a matter of law. A valid sexual harassment policy was in place. It was published and known to the employees, including Reyes, through the Handbook.  Upon Reyes' complaint about Gaytan, the employer's investigation and action were swift.  Corrective action was taken, including the threat of termination if conduct of the sort alleged occurred.  And the fact that Reyes remained unbothered by Gaytan for the remainder of her employment with Spud Seller evidences decisively that Spud Seller's conduct was reasonable.  As a matter of law, Spud Seller's conduct with respect to Reyes discharged its obligations under Title VII.

**B.    Defendant is entitled to Summary Judgment on Plaintiff's and Plaintiff-Intervenor's Claim for Relief Sexual Harassment of Maria Portillo**

1.    Burden of proof and elements

Spud Seller incorporates herein by reference the discussion of burden of proof and elements set out in Section A. above.  As in the case of Reyes, Plaintiff and Portillo cannot prove a basis for employer liability because Spud Seller discharged its obligations to Portillo by taking appropriate preventative and remedial action in response to her complaint of sexual harassment.

Plaintiff and Plaintiff-Intervenor also allege that the alleged harassment of Portillo amounted to constructive discharge.  AC para. 24 and 41; C para. 27.

Constructive discharge occurs when:

    a.    the employer by its illegal discrimination;

    b.    has made working conditions so difficult;

    c.    that a reasonable person in the employee's position would feel compelled to resign.

*E.E.O.C v. PVNF, L.L.C.*, 487 F.3d 790, 805 (10th Cir. 2007).  In evaluating whether the working conditions would cause such a feeling in a reasonable person an objective test is applied in which neither the employee's subjective views of the situation, nor her employer's subjective intent, are relevant. *Id.*

The plaintiff's burden in proving constructive discharge is substantial.  Mere showing of adverse or tangible employment action[1] is not necessarily sufficient. Constructive discharge requires a showing that the working conditions imposed by the employer are not only tangible or adverse, but intolerable.  The extent of a plaintiff's burden is exemplified by the decision in *Bolden v. PRC Inc.*, 43 F.3d 545 (10th Cir. 1994).  The Tenth Circuit affirmed the entry of summary judgment in favor of the employer where the plaintiff, an African-American male, claimed he had been constructively discharged as a result of racial remarks made to and about him during the course of his employment including "honky," "nigger," "dickhead," "dumbshit,"

---

[1] A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits. *Burlington Ind., Inc. v. Ellerth*, 524 U.S. 742, 760, 118 S.Ct. 2257, 141 L.Ed. 633 (1998).

"asshole," "faggot" and "fool."  43 F.3d at 549.   One co-worker told the plaintiff "you better be careful because we know people in [the] Ku Klux Klan."  *Id.*  As the Tenth Circuit stated:

> [Plaintiff] has shown he was unhappy at work and he resigned because he could not deal with the taunting any longer.  However, not every unhappy employee has an actionable claim of constructive discharge pursuant to Title VII.  [Plaintiff] has failed to show how his resignation was the result of illegal discriminatory conduct.

43 F.3d at 552.

The question is not whether the employee's departure resulted from the employer's actions, but whether the employee had any other reasonable choice but to resign in light of the employer's actions.  *Id.*[2]  Put another way, constructive discharge is a difficult showing to make.  Plaintiff and Plaintiff-Intervenor must show that, at the time of Portillo's departure from employment, Spud Seller did not allow her the opportunity to make a free choice regarding her employment relationship.  *Exum v. U.S. Olympic Committee*, 389 F.3d 1130, 1135 (10th Cir. 2004).

2.   Elements of constructive discharge that cannot be proven by Plaintiff-Intervenor

Plaintiff and Plaintiff-Intervenor cannot prove that, under the objective test, Portillo's working conditions were intolerable.

Plaintiff and Plaintiff-Intervenor cannot prove that, under the objective test, a reasonable person in the same position as Portillo would feel compelled to resign.

---

[2] Plaintiff-Intervenor's complaint was investigated by Defendant and acted upon, thus absolving Defendant of liability to her under the law of this Circuit.  *Adler v. Wal-Mart Stores, Inc.*, 144 F. 3d 664, 676 (10th Cir. 1998). Defendant urges application of the law as articulated by the 8th Circuit in *McCurdy v. Ark. State Police*, 375 F.3d 762, 771 (8th Cir. 2004) to Plaintiff-Intervenor's claim, which would result in dismissal under the *Ellerth/Faragher* defense articulated below.

The following material facts are undisputed:

i.      Portillo first worked at Spud Seller for two months in 2006.[3] Portillo Deposition, Exhibit 8, p. 8, ll. 5 – 12.

ii.     Portillo received a Handbook from Spud Seller in 2006.  Exhibit 8, p. 11, ll. 17 – 19.

iii.    On October 4, 2006, Portillo signed a Compliance Agreement indicating that she had received, read or had read to her, and understood the Handbook.  Exhibit 7A (SS 36); Exhibit 8, p. 13, l. 24 – p. 14, l. 2.  A Spud Seller employee went over documents with Portillo in Spanish in 2006 when she first started at the company.[4] Exhibit 8, p. 13, ll. 9 – 22.

iv.     Portillo viewed a videotape in Spanish in 2006 when she went to work for Spud Seller.  Portillo thinks the videotape explained to her that sexual harassment was strictly forbidden, described what sexual harassment was, and informed her of how to report sexual harassment.  Exhibit 8, p. 15, l. 16 – p. 17, l. 22.

v.      No Spud Seller employee behaved toward Portillo in a way that she believed was discriminatory or sexually harassing in 2006.  Exhibit 8, p. 26, l. 25 – p. 27, l. 10.

vi.     Portillo watched the videotape again in September of 2007, when she returned to work at Spud Seller.  Exhibit 8, p. 17, ll. 2 – 9.  The video instructed her that company policy strictly forbad sexual harassment, described what sexual harassment

---

[3] Portillo was for a time known by her married name Ramirez and signed several documents using that name. Exhibit 8, p. 115, ll. 2 – 18.

[4] Portillo speaks Spanish, but does not speak or read English.

as, and instructed her to report harassment and to whom to report it.  Exhibit 8, p. 19, ll. 4 – 18.

viii.   On September 10, 2007, Portillo again signed a Compliance Agreement indicating that she had received, read or had read to her, and understood the Handbook. Her deposition testimony was that she thinks she received another copy of the Handbook at that time.  Exhibit 9 (SS 61); Exhibit 8, p. 17, l. 25 – p. 19, l. 3 (but see correction pages).

viii.   No Spud Seller employee behaved toward Portillo in a way that she believed was discriminatory in 2007.   And no employee of Spud Seller except for Gaytan is alleged by Portillo to have sexually harassed her in 2007.  Exhibit 8, p. 28, l. 19 – p. 29, l. 8.

ix.   Portillo claims that Gaytan assaulted her on December 7, 2007, when he allegedly turned out the lights to the warehouse, blocked her exit through the doorway, grabbed her and tried to kiss her.  She prevented him from kissing her and escaped his grasp by hitting him with her knee.  Exhibit 8 p. 29, l. 14 – p. 34, l. 10.

x.   About a week and a half after December 7, 2007, Portillo claims to have spoken to D. Hazard about what had happened on that date.  Exhibit 8, p. 42, l. 25 – p. 43, l. 3.  Maria Atencio translated the conversation, and D. Hazard said the he would speak to Gaytan about the allegation and set up a meeting for Portillo with J.Hazard. Exhibit 8, p. 61, l. 3 - p. 63, l. 6.  The meeting with J. Hazard occurred, to Portillo's memory, on the 17th or 18th of December, 2007.  Exhibit 8, p. 63, ll. 14 – 19.  Vanessa

Duran served as the interpreter and, according to Portillo, successfully translated the conversation. Exhibit 8, p. 63, l. 23 – p. 65, l. 2.

xi.     In the meetings with D. Hazard and J. Hazard, Portillo informed them of some of the "nasty talk" Gaytan had used, but did not say when or where this nasty talk had occurred. Exhibit 8, p. 67, line 4 – p. 68, l. 18.

xii.     After speaking with D. Hazard, Portillo understood that she was to stay away from Gaytan. Exhibit 8, p. 69, ll. 13 – 19.

xiii.     Portillo's meeting with J. Hazard is memorialized in a memorandum dated December 18, 2007. Exhibit 10 (SS 650). Portillo was instructed not to have any contact with Gaytan and to report to D. Hazard for work schedules and tasks.

xiv.     D. Hazard's investigation of Portillo's complaint against Gaytan is memorialized in a memorandum dated December 19, 2007. Exhibit 11 (SS 261). Surveillance video was reviewed and an alleged witness interviewed. Review of the video and the interview of the witness revealed no evidence corroborating Portillo's allegations. D. Hazard further explained the investigation conducted and the reaction of Spud Seller to Portillo's allegations in a letter to the Colorado Civil Rights Commission dated June 30, 2008. Exhibit 12 (SS 262). This letter too memorializes that Portillo was instructed to report for supervision to D. Hazard and to report any further problems with Gaytan.

xvi.     Before the physical contact of December 7, 2007, Gaytan had not grabbed her, but had made sexual, vulgar, and crude comments to Portillo. Exhibit 8, p. 45, l. 4

13

– p. 47, l. 12.  But before the day of the alleged physical confrontation Portillo told no one about the nasty talk by Gaytan.  Exhibit 8, p. 56, l. 18 – p. 57, l. 20.

     xvii.    Neither the nasty talk nor the physical confrontation kept Portillo from doing her job at Spud Seller.  Exhibit 8, p. 59, ll. 5 – 15.

     xviii.    Gaytan never assaulted or grabbed, or even talked with, Portillo again. Exhibit 8, p. 44, l. 23 – p. 45, l. 3.  After December 7, 2007, Portillo never spoke with Gaytan again.  Exhibit 8, p. 49, ll. 4 – 6.  After her complaint to Spud Seller, Portillo was not harassed in any way, and Gaytan said nothing further to her.  Exhibit 8, p. 71, l. 22 – p. 72, l. 13.

     xix.    Portillo testified in her deposition that she left Spud Seller's employ in January 2008 because she felt bad because of carbon monoxide poisoning and because of what had happened with Gaytan.  Exhibit 8, p. 73, l. 18 – p. 74, l. 20.  In her affidavit submitted to the EEOC to support its investigation, Portillo swore under oath that she "left [her] job in January 2008 for other reasons related to [her] health and exposure to toxic gases.  Exhibit 13 (Portillo 101 & 102).[5]

     As with class member Reyes, Spud Seller's conduct with respect to Portillo was reasonable as a matter of law.   A valid sexual harassment policy was in place. It was published and known to the employees, including Portillo, through the Handbook, a reading of the Handbook in Spanish to Portillo, and a Spanish language videotape presentation, all of which Portillo has testified she understood.  Upon Portillo's complaint about Gaytan, Spud Seller's investigation and action were immediate.  Corrective action

---

[5] Portillo signed and swore that Exhibit 13 was the truth, and had it translated to her by the offices of her counsel, Colorado Legal Services.  Exhibit 8, p. 103, l. 15 – p. 104, l. 25.

was taken, including the transfer of Portillo from supervision by Gaytan. The effectiveness of the action of Spud Seller upon Portillo's complaint is again exemplified by the fact that, according to Portillo herself, no further harassment occurred of any kind, by any person, including Gaytan.  The fact that Reyes remained unbothered by Gaytan for the remainder of her employment with Spud Seller evidences decisively that Spud Seller's conduct was reasonable.  As a matter of law, Spud Seller's conduct with respect to Portillo discharged its obligations under Title VII.

The claim of constructive discharge of Portillo fails the objective test. Portillo concedes that neither the alleged nasty talk nor the alleged physical confrontation kept her from doing her job at Spud Seller. Compare *Penry v. Fed. Home Loan Bk. Of Topeka*, 155 F.3d 1257, 1261 & 1264 (10th Cir. 1998) (comment about getting into an assistant's "drawers" and four specific acts of unwanted physical contact not sufficient to save a constructive discharge claim from summary judgment).  Her employer's action in removing her from supervision by Gaytan, Portillo's admission that no further harassment occurred, and the fact that Gaytan avoided her after Spud Seller's response to the complaint, demonstrates that Spud Seller did not make her working conditions intolerable.  That Portillo may now claim to have been subjectively uncomfortable around Gaytan does not create a constructive discharge.  The claim of constructive discharge fails as a matter of law.

**C.    Defendant is entitled to summary judgment on its *Faragher/Ellworth* affirmative defense.**

1.    Burden of proof and elements:

When no tangible employment action is taken, a defending employer may raise an affirmative defense to liability or damages, subject to proof by a preponderance of the evidence, that comprises two elements:

a.    that the employer exercised reasonable care to prevent or correct promptly any sexually harassing behavior; and

b.    that the plaintiff employee unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer or to avoid harm otherwise.

*Faragher v. City of Boca Raton*, 524 U.S. 775, 807, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998); *Burlington Ind., Inc. v. Ellerth*, 524 U.S. 742, 765, 118 S.Ct. 2257, 141 L.Ed. 633 (1998).

An employer cannot be expected to correct harassment unless the employee makes a concerted effort to inform the employer that a problem exists under reasonable procedures; thus an employee claiming harassment bears a significant responsibility in notifying the employer.  *Pinkerton*, 563 F.3d at 1063 - 1064; *E.E.O.C. v. Xerxes Corp.*, 639 F.3d 658, 674 (4th Cir. 2011) (citations omitted).

2.    The undisputed facts show the of the claims of several class members are barred by the *Faragher/Ellworth* affirmative defense.

In addition to Reyes and Portillo, the EEOC has identified eight other members of the class for which they seek recovery.  The identified class members who are alleged

to have been harassed by Gaytan include:  Mary Atencio ("Atencio"); Shannon Cisneros

("S. Cisneros"), April Cordova ("Cordova"), Shane Gomez ("Gomez"), Dreamisha

Guerrero ("Guerrero"); Leticia Navarro Salazar ("Salazar"); Joni Mae Marquez, now

known as Cisneros through marriage ("J. Cisneros"); and Leanda Michelle Villalba

("Villalba") (hereafter when referred to collectively "class members").    EEOC's

Responses to Defendants First Written Discovery Requests to Plaintiff, Answers to

Interrogatories 3, 4, 5, and 6, Exhibit 14.[6] Of those class members, the following

undisputed material facts, including the absence of any tangible employment action and

the failure to report any complaints to Spud Seller, demonstrate that, as to class

members Atencio, Cordova, Gomez, Guerrero, J. Cisneros and Salazar, their claims are

barred.[7]

i.     No tangible employment action arising out of the alleged harassment was

taken with respect to the Atencio, Cordova, Gomez, Guerrero, J. Cisneros and Salazar.

Atencio Deposition, Exhibit 15, p. 46, l. 22 – p. 47, l. 6 (got paid well); Cordova

Deposition, Exhibit 19, p. 27, ll. 17 – 21 and p. 68, l. 18 – p. 69, l. 1 (fired for bringing

alcohol on premises and didn't care about working at Spud Seller); Gomez Deposition,

Exhibit 21, p. 18, l. 13 – p. 20, l. 20, p. 58, ll. 22 – 25, and p. 65, ll. 9 -16 (quit Spud

Seller four times; never complained about working conditions, never fired); Guerrero

Deposition, Exhibit 23, p. 31, ll. 9 – 17 (never disciplined); J. Cisneros Deposition,

---

[6] EEOC identified another class member, Theresa Venzor.  Venzor refused to appear for her deposition and the
EEOC agreed in writing on December 24, 2011, that it is no longer seeking relief for her.
[7] As to S. Cisneros and Villalba, there exists a disputed issue of material fact for trial.  S. Cisneros and Villalba
claim to have complained to D. Hazard about Gaytan's harassment. Exhibit 17, p. 34, l. 10 to 35., l. 17; Exhibit
29, p. 66, l. 2 to p. 67, l. 4.   D. Hazard denies having ever received complaints from S. Cisneros or Villalba.  Exhibit
30, p. 174, l. 5-6, 24-25 to p. 175, l. 15 and p. 178, l. 24 to p. 179, l. 14.

Exhibit 25, p. 21, l. 8 – p. 23, l. 11 and p. 73, ll. 1 - 6 (left Spud Seller for maternity leave and to take a different job; no demotions or cuts in pay); Salazar Deposition, Exhibit 27, p. 43, ll. 24 – 25 and p. 55, l. 25 – p. 56, l. 19  (not fired, left Spud Seller to return to husband in Nashville).

ii.    All the class members signed acknowledgments of their receipt and understanding of the Handbook and/or of Spud Seller's policies and procedures. Exhibit 15, p. 20, l. 7 – p. 21, l. 2; Exhibit 16, (Exhibit 68 to Atencio Deposition); S. Cisneros Deposition, Exhibit 17, p. 18, l. 25 – p. 19, l. 6; Exhibit 18 (SS 1240); Exhibit 19, p. 15, l. 21 – p. 16, l. 15; Exhibit 20 (SS 482); Exhibit 21, p. 24, l. 24 – p. 25, l. 12; Exhibit 22 (SS 531 and 550); Exhibit 23, p. 51, ll. 3 – 24; Exhibit 24 (SS 383) (Safety Survey initialed and signed by Guerrero acknowledging having read policies and procedures); Exhibit 25, p. 28, l. 20 – p. 29, l. 18 and p. 113, l. 20 – p. 114, l. 11; Exhibit 26 (SS 419, 426, 455, and 456); Exhibit 27, p. 15, ll. 6 – 24; Exhibit 28 (SS 402); Deposition of Villalba Exhibit 29, p. 20, ll. 5 – 2; Exhibit 29A (SS 81)

iii.    All of the class members except Guerrero recall receiving the Handbook. Exhibit 15, p. 21, ll. 6 – 22; Exhibit 17, p. 19, ll. 7 – 19; Exhibit 19, p. 17, ll. 14 – 16; Exhibit 21, p. 24, ll. 4 – 21 and p. 27, l. 24 – p. 29, l. 3; Exhibit 25, p. 27, ll. 5 – 8 and p. 114, ll. 12 - 17; Exhibit 27, p. 16, l. 10 – p. 18, l. 3; Exhibit 29, p. 20, ll. 8 – 25.

iv.    The majority of the class members watched the policy and procedure video which instructed them that sexual harassment was strictly prohibited, advised them what sexual harassment was, and instructed them on how and to whom to report harassment.  Exhibit 17, p. 21, l. 3 – p. 22, l. 21; Exhibit 19, p. 17, l. 24 – p. 18, l. 1;

Exhibit 21, p. 29, l. 23 – p. 31, l. 7; Exhibit 23, p. 28, l. 5 – p. 30, l. 15; Exhibit 25, p. 27, l. 12 – p. 28, l. 7; Exhibit 27, p. 18, l. 4 - p. 20, l. 2

  v.  Sexual harassment was discussed at Spud Seller employee meetings, including the policy that sexual harassment was to be reported, and to who it could be reported. Exhibit 17, p. 96, l. 20 – p. 97, l. 15; Exhibit 21, p. 78, ll. 9 – 23; Exhibit 27, p. 61, l. 11 – p. 62, l. 23.

  vi.  Despite their awareness of Spud Seller's policies and procedures, class members Atencio, Cordova, Gomez, Guerrero, and Salazar never made any claim of discrimination or sexual harassment while working at Spud Seller, whether against Gaytan or anyone else. Exhibit 15, p. 33, ll. 6 – 9 and p. 36, ll. 7 – 9; Exhibit 19, p. 25, l. 24 – p. 26, l. 1; Exhibit 21, p. 34, ll. 22 -25, p. 40, ll. 14 – 16, p. 42, ll. 22 – 23; p. 45, l. 6 – 8, p. 54, ll. 1 – 3 and ll. 14 – 17, and p. 58, ll. 8 – 10; Exhibit 23, p. 41, l. 14 – p. 43, l. 22; Exhibit 27, P. 47, l. 19 – p. 50, l. 14, p. 58, ll. 4 – 12, and p. 95, ll. 15 -17.[8]

  vii.  Despite her awareness of Spud Seller's policies and procedures, J. Cisneros never complained about Gaytan's behavior to anyone in authority at Spud Seller. Exhibit 25, p. 57, ll. 9 – 11, p. 58, ll. 14 – 16, p. 84, line 20 – 22, and p. 101, ll. 10 - 13.[9]

---

[8] Cordova admittedly suffered no sexual harassment at all. Her complaints about Gaytan's behavior are limited to his 1) objecting to her taking time off of work to attend court for her daughter, 2) complaining to her that she was spending too much time in the bathroom, and 3) brushing up against her side while instructing her on the proper way to sort potatoes around machinery. Exhibit 19, p. 20, l. 14 – p. 25, l. 23. All of this behavior is perfectly consistent with the conduct of a foreman and not imbued with sexual overtones. As to Cordova, Plaintiff cannot prove that the discrimination alleged was sufficiently severe or pervasive that it altered the terms or conditions of her employment and created an abusive working environment.

[9] J. Cisneros alleges that she complained to D. Hazard about an employee named Mariano who she claims touched her legs and groped her breasts. Exhibit 25, p. 44, l. 5 – p. 46, l. 23. Assuming the truth of this allegation, after complaining to D. Hazard, and after Gaytan spoke to Mariano, J. Cisneros admits she was never touched or groped

viii.    Class members Atencio, Gomez, Guerrero, J. Cisneros and Salazar do not believe and/or did not hear any complaints or make any observations that any of the several supervisors authorized to receive harassment complaints acted in a way that indicated they didn't want to hear about complaints of sexual harassment.  Exhibit 15, p. 67, ll.1 – 4; Exhibit 21, p. 59, ll. 1 – 10 and p. 82, ll. 10 –  p. 83, l. 6; Exhibit 23, p. 73, ll. 19 – 24; Exhibit 25, p. 66, l. 25 – p. 67, l. 3; Exhibit 27, p. 71, ll. 15 – 17 and p. 86, ll. 16 – 20.

As already established above in Section A, Spud Seller used reasonable care to prevent or correct promptly any sexually harassing behavior when it instituted valid policies and procedures prohibiting and providing for the reporting, investigation, and discipline of sexual harassment complaints.  The class members have admitted that Spud Seller did all these things, informed them in writing of the policies and procedures, and conducted videotaped and meeting training on the subject of sexual harassment.

And by their own sworn testimony, class members Atencio, Cordova, Gomez, Guerrero, J. Cisneros and Salazar have admitted that no tangible employment action arising out of the alleged discrimination was taken against them, and that they did not report to Spud Seller the sexual harassment about which they now complain.   Under all of the circumstances, their failure to take advantage of the reporting and investigation procedures of Spud Seller was unreasonable.  Under *Faragher/Ellworth* and the cases following that authority, the claims of these six class members are barred and Plaintiff

---

or spoken to by Mariano again.  For the reasons set out in Sections A and B above, there is no employer liability for Mariano's harassment.

can not succeed in recovering damages or other remedy on their behalf as a matter of law.

> **D.  Defendant is entitled to Summary Judgment on Plaintiff's and Plaintiff-Intervenor's Claim for Punitive Damages**

> 1.  Burden of proof and elements

Punitive damages in Title VII cases are authorized where the plaintiff "demonstrates" that the employer has engaged in intentional discrimination and has done so "with malice or with reckless indifference to the plaintiff's federally protected rights. 42 U.S.C. §1981a(b)(1). The terms "malice" and "reckless indifference" pertain not to the employer's knowledge that it is illegally discriminating, but to its knowledge that it may be acting in violation of federal law. *Kolstad v. Am. Dental Ass'n.*, 527 U.S. 526, 536, 119 S.Ct. 2118, 144 L.Ed.2d 494 (1999). But the inquiry does not end with a showing of the requisite mental state by a certain employee. Instead, common law agency principles guide consideration an employer's vicarious liability. *Id.* at 539, 119 S.Ct. 2118.

At common law, and according to the Restatement of Agency, an employer is vicariously liable for punitive damages where:

> a.  an employee serving in a 'managerial capacity' committed the wrong;

> b.  while 'acting in the scope of employment.'[10]

*Kolstad*, 527 U.S. 526, 542-543, 119 S.Ct. 2118.

---

[10] An employee acts within the scope of his employment if the conduct is of the kind he is employed to perform, occurs within the time and space limits of employment, and is actuated at least in part by a purpose to serve the employer. *Kolstad,* 527 U.S. at 543-544, 119 S.Ct. 2118 (citing Restatement (Second) of Agency, §228(1)).

But it is likewise improper to award punitive damages against a personally innocent employer that would otherwise be liable only vicariously. *Id.* at 544, 119 S.Ct. 2118. An employer may not be vicariously liable for the violative decisions of managerial agents where those decisions are contrary to the employer's good faith efforts to comply with Title VII. *Id.* at 544, 119 S.Ct. 2118 (citations omitted).

The 10th Circuit has ruled that to avail itself of *Kolstad's* good-faith-compliance standard, an employer must at least do the following:

a.  Adopt antidiscrimination policies (it is incontrovertible that Spud Seller did so);

b.  Make a good faith effort to educate its employees about these policies and the statutory prohibitions (every single employee identified as a member of the class of employees harassed, and Plaintiff-Intervenor, admit to having been educated by personal instruction, videotape, and provision of the Handbook, and sexual harassment was the subject of employee meetings as well);

c.  make good faith efforts to enforce an antidiscrimination policy.

*Cadena v. Pacesetter Corp.*, 224 F.3d 1203, 1210 (10th Cir. 2000).

> 2.  Spud Seller's conduct meets the Kolstad standard and punitive damages are not recoverable in this case.

It is undisputed that the individual alleged to have committed the sexual harassment at issue in this case is Gaytan. AC, para. 14, 16, 17, 18, 25, 26, 30, 31, and 32; C, para. 17, 18, 19, 20, and 28. Gaytan was a floor foreman at Spud Seller in the relevant time period before 2005, and was the assistant manager from 2005 to September of 2010. Deposition of D. Hazard, Exhibit 30, p. 20, l. 18 – p. 21, l. 2. Given

the clear anti-sexual harassment policy of Spud Seller, it is beyond purview that, assuming the allegations against him to be true for purposes of this motion (which he denies), Gaytan was acting contrary to the policies of his employer.

At the same time, while administering the sexual harassment policy of Spud Seller, Gaytan's superiors were, according to the employees whom EEOC is attempting to recover on behalf of, above board in their dealings with the employees, approachable about issues of sexual harassment, and innocent of harassment themselves.   See Section C.2.viii. above and S. Cisneros Deposition, Exhibit 17, p. 95, l. 20 – p. 96, l. 14; Exhibit 21, p. 75, l. 16 – p. 76, l. 15  (S. Cisneros and Gomez did not witness any sexual harassment or inappropriate behavior by D. Hazard, J. Hazard, or Lynn McCullough ("McCullough"))[11]; Exhibit 3, p. 138, l. 22 – p. 139, l. 9; Exhibit 19, p. 62, l. 16 – p. 63, l. 2 and p. 67, l. 23 – p. 68, l.13; Exhibit 25, p. 94, l. 17  - p. 95, l. 2; (Reyes, Cordova, and J. Cisneros neither saw nor heard of complaints of discriminatory or harassing behavior by D. Hazard, J. Hazard, or McCullogh); Exhibit 8, p. 92, l. 6 – p. 93, l. 2; Exhibit 23, p. 70, l. 21 – p. 71, l. 8; Exhibit 27, p. 83, l. 19 – p. 84, l. 3 (Portillo, Guerrero and Salazar never heard of complaints of discriminatory or harassing behavior by D. Hazard, J. Hazard, or McCullogh).

The undisputed facts already cited above demonstrate that Spud Seller adopted reasonable anti-sexual harassment policies and used good faith efforts to educate its employees about those policies and the legal prohibition against harassment.  It is also undisputed that Spud Seller made good faith efforts to enforce the policies.

---

[11] D. Hazard is the warehouse manager, L. Hazard is the office manager, and McCullough is the President of Spud Seller.  See Exhibit 1, Bates No. SS 3 and Exhibit 2, Bates No. SS 172.

Specifically, investigations and corrective action were taken in the instances of Reyes, Portillo, and J. Cisneros discussed above.   Further, Spud Seller has consistently taken action to enforce its policies and procedures in circumstances other than those raised by Plaintiff and Plaintiff-Intervenor.   Such efforts have included a range of action from warning letters and reports and memoranda, to conversations on the warehouse floor.  Exhibit 31 (SS 1155, 1156, 1157, 1158); Exhibit 30, p. 140, l. 12 - p. 141, line 21.   Wolf whistling and sexist comments resulted in quickly escalating discipline from warning to termination when the discipline was met with insubordination and physical threat.  Exhibit 32 (EEOC 349, 350, 351); Exhibit 30, p. 42, l. 24 – p. 57, l. 6.  Spud Seller enforced its sexual harassment policies in good faith.

In light of Defendant's conformance to the requirements of *Kolstad's* good-faith-compliance standard, there is no competent evidence of any fact in dispute as to Spud Seller's lack of malice and recklessness.  Punitive Damages are not recoverable in this case as a matter of law.

## CONCLUSION

Defendant is entitled to summary judgment as a matter of law on the claims of Plaintiff on behalf of Reyes and Portillo and on the claims of Plaintiff-Intervenor Portillo because there is no basis for employer liability as Spud Seller fulfilled its obligations under Title VII by taking appropriate remedial or preventative action.

Defendant is entitled to summary judgment as a matter of law on the claims of Plaintiff on behalf of Atencio, Cordova, Gomez, Guerrero, J. Cisneros and Salazar as their claims are barred as a matter of law by the *Faragher/Ellworth* affirmative defense.

Defendant is entitled to summary judgment as a matter of law on the claims of Plaintiff and Plaintiff-Intervenor for punitive damages as Spud Seller has established its compliance with the *Kolstad's* good-faith-compliance standard. There is no evidence that "demonstrates" that Spud Seller  has engaged in intentional discrimination and has done so with malice or with reckless indifference to the plaintiff's federally protected rights.

Plaintiff has confirmed in writing that it is no longer seeking to recover on behalf of Theresa Venzor.

Wherefore Defendant moves this Court pursuant to Fed.R.Civ.P. 56 for an order dismissing all claims except those of Plaintiff on behalf of class members S. Cisneros and Villalba, and for such additional relief as the Court deems just and proper.

Dated this 28th Day of December, 2011.

Respectfully submitted:

s/ Daniel R. Satriana, Jr.
s/ Matthew Y. Biscan
Attorneys for Defendant
Clisham, Satriana & Biscan, LLC
1512 Larimer Street, Suite 400
Denver, Colorado  80202
(303) 468-5402
(303) 468-5403
(303) 942-7290 (fax)
satrianad@csbattorneys.com
biscanm@csbattorneys.com

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 28, 2011, I served the within document via ECF to the following:

William E. Moench
William.moench@eeoc.gov


Jennifer J. Lee
jlee@colegalserv.org

Jenifer Rodriguez
jrodriguez@colegalserv.org


Iris Halpern
iris.halpern@eeoc.gov


s/ <u>Daniel R. Satriana, Jr.</u>
Attorneys for Defendant
Clisham, Satriana & Biscan, LLC
1512 Larimer Street, Suite 400
Denver, Colorado  80202
(303) 468-5402
(303) 942-7290 (fax)
satrianad@csbattorneys.com