IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 10-cv-02381-MSK-KLM

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

        Plaintiff,

MARIA PORTILLO, a/k/a MARIA JESUS DE RAMIREZ,

        Plaintiff-Intervenor,

v.

THE SPUD SELLER, INC.,

        Defendant.

---

**PLAINTIFF-INTERVENOR'S RESPONSE TO DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT**

---

COMES NOW Plaintiff-Intervenor Maria Portillo, in opposition to the Defendant's

Motion for Summary Judgment (Doc. 42) pursuant to Fed. R. Civ. P. 56.

## INTRODUCTION

On December 7, 2007, Mauricio Gaytan ("Gaytan") sexually assaulted Plaintiff-

Intervenor after he found her alone in the warehouse.  As soon as the person lined up in front of

Plaintiff-Intervenor had clocked out and gone out the door, Gaytan turned off the lights, grabbed

Plaintiff-Intervenor by both arms and pulled her toward him, groping her and trying to kiss her.

Luckily, Plaintiff-Intervenor was able to push him off and run out of the warehouse.  Def.'s Mot.

Ex. 8 (Portillo Dep. 29:18-30:1, as amended, 32:3-34:3); Def.'s Mot. 12.  During the weeks

leading up to the attack, Gaytan had sexually harassed Plaintiff-Intervenor on a daily basis by

making frequent remarks and/or gestures to Plaintiff-Intervenor, such as how he liked her "ass,"

wanted "a piece of [her] tail," or wanted to "eat [her] like this" before sticking his tongue out and

moving it around.  Def.'s Mot. Ex. 8 (Portillo Dep. 45:21-46:7, 47:10-12, as amended, 55:8-10).

As a result, Gaytan's conduct caused Plaintiff-Intervenor to suffer emotionally and physically.

As she stated at her deposition more than three years later: "Well, as you can see, I haven't

stopped crying.  I don't do it all the time, but I still cry."  Pl.-Int.'s Ex. A (Portillo Dep. 119:3-4,

125:18-19, 128:6-9).

Plaintiff-Intervenor was an hourly employee who sorted and packed potatoes at

Defendant's warehouse.  Pl.-Int.'s Ex. B (J. Hazard Dep. 141:13-17); Pl.-Int.'s Ex. C (Gaytan

Dep. 60:10-21).  She was one of the many Spanish-speaking employees who were supervised by

Gaytan, who is bilingual.  Pl.-Int.'s Ex. D (D. Hazard Dep. 21:10-17, 191:1-3, 191:20-192:4, as

amended).  As the Assistant Warehouse Manager, Gaytan supervised all the warehouse

employees who sorted and packed potatoes, and he was the highest supervisor on site, except for

the Warehouse Manager (Dan Hazard) and the Office Manager (Jennie Hazard).  Pl.-Int.'s Ex. D

(D. Hazard Dep. 21:10-21).  At the time of the assault, Plaintiff-Intervenor earned approximately

$7 per hour,[1] while Gaytan earned an annual salary of $52,000.  Pl.-Int.'s Ex. C (Gaytan Dep.

20:18-21); Def.'s Mot. Ex. 8 (Portillo Dep. 95:21-96:3).

Apart from Plaintiff-Intervenor, many other female hourly employees who sorted and

packed potatoes also experienced sexual harassment by Gaytan.  Gaytan exposed himself, rubbed

against another female employee with an erect penis and grabbed the buttocks and breasts of

---

[1] The annual salary for a worker making $7 per hour, 40 hours per week, is $14,560.

some of the other women.  Def.'s Mot. Ex. 17 (Cisneros Dep. 33:2-3); Pl.-Int.'s Ex. E (Reyes

Dep. 80:15-16); Pl.-Int.'s Ex. F (Villalba Dep. 44:18-25); Pl.-Int.'s Ex. G (Guerrero Dep. 38:24-

39:8).  When female employees would bend over, Gaytan would stand behind them like he was

"humping" them or would warn them not to bend over because it was an invitation to sexual

advances.  Pl.-Int.'s Ex. F (Villalba Dep. 54:2-15); Pl.-Int.'s Ex. E (Reyes Dep. 111:4-5); Pl.-

Int.'s Ex. H (Atencio Dep. 30:20-23).  Gaytan told female employees that he liked their "ass,"

that they looked good, and he asked them out on dates.  Pl.-Int.'s Ex. I (Gomez Dep. 46:8-21,

50:8-18).  He told one female employee that he had a lot of energy because he "ate his wife out

every night."  Pl.-Int.'s Ex. H (Atencio Dep. 29:12-16).  Gaytan told another woman that he

could get her her job back if she slept with him and then essentially forced her into having sex.

Pl.-Int.'s Ex. J (Cisneros Dep. 51:13, 55:9-56:1, 58:8-21).

Defendant does not challenge that the record is replete with examples of sexual

harassment by Gaytan.  Def.'s Mot. 1-2.  Nor does it dispute that Plaintiff-Intervenor complained

about Gaytan's harassing conduct.  *Id.* at 2.  Rather, Defendant argues that it should be absolved

from liability because it had an anti-sexual harassment policy and addressed any complaints

raised about Gaytan.  *Id.* at 2, 8, 14-15.  Defendant's argument, however, suffers from two fatal

flaws.

First, Defendant misapprehends several of the legal standards that apply to Plaintiff-

Intervenor's claim.  Defendant's Motion, for example, fails to address Plaintiff-Intervenor's

claim of vicarious liability and to establish an affirmative defense to this claim.

Second, Defendant's assertion that it adequately enforced its anti-sexual harassment

policy is not supported by the record.  As discussed more extensively below, Defendant had

ongoing knowledge of Gaytan's harassing conduct, yet failed to take any sort of remedial action against him.  Instead, Defendant chose to believe that the complaints against Gaytan had been fabricated, even without any evidence that the female employees were lying.  While employees other than Gaytan were disciplined for having engaged in similar or less severe sexual harassment, Gaytan was promoted and rewarded with salary increases.  Not surprisingly, Defendant's official acts permitted a hostile work environment to flourish in which Gaytan went on to harass at least four additional female employees.

Defendant's Motion, therefore, should be denied because Plaintiff-Intervenor has established that there are triable issues of fact that remain regarding Plaintiff-Intervenor's claim of sexual harassment.

**CLAIMS AND DEFENSES UPON WHICH JUDGMENT IS SOUGHT:**
**CLAIM OF SEXUAL HARASSMENT**

**A.     Defendant Is Vicariously Liable for the Hostile Work Environment Created by its Supervisor.**

1.     <u>Burden of proof and elements</u>

Plaintiff-Intervenor agrees with Defendant's recitation of the burden of proof and elements to establish a hostile work environment claim.  Def.'s Mot. 3.  Plaintiff-Intervenor, however, disagrees with Defendant's recitation of the legal standard required to show employer liability.  *Id.* at 3-4.  "An employer is subject to vicarious liability to a victimized employee for an actionable hostile work environment created by a supervisor with immediate (or successively higher) authority over the employee."  *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 724, 765 (1998); *Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998).

2.       Defendant does not challenge any of these elements

Defendant does not challenge any of the elements required to establish a hostile work environment claim.  Def.'s Mot. 1-2.  Nor does it dispute that Gaytan, who perpetrated the harassing conduct, was a supervisor with immediate authority over Plaintiff-Intervenor.  Def.'s Mot. Ex. 13 (Portillo Aff. 6/10/08 ¶ 3); Pl.-Int.'s Ex. D (D. Hazard Dep. 191:20-192:4).

**B.    Defendant Has Not Shown that It Is Entitled to the *Farragher/Ellerth* Affirmative Defense**

1.       Burden of proof and elements

In *Faragher* and *Ellerth*, the Supreme Court elucidated the affirmative defense available to an employer being sued under a theory of vicariously liability for the discriminatory acts of its supervisor.  *Faragher*, 524 U.S. at 807; *Ellerth*, 524 U.S. at 765.  Defendant properly recites the burden of proof and elements of the "Faragher/Ellworth [sic]" defense: (1) "that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior; and" (2) "that the plaintiff employee unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer or to avoid harm otherwise."  Def.'s Mot. 16. Defendant, however, fails to use this framework to argue that it is entitled to summary judgment on Plaintiff-Intervenor's claim.  *Id.* at 8-15.

Instead, Defendant obliquely argues in a footnote that it can escape liability because "Plaintiff-Intervenor's complaint was investigated by Defendant and acted upon."  *Id.* at 10 n.2. While it is difficult to parse through Defendant's argument, to the extent that Defendant is relying on *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664 (10th Cir. 1998), to absolve itself of vicarious liability from Plaintiff-Intervenor's claim of a hostile work environment, Defendant is wrong that it is the "law of this Circuit."  Def.'s Mot. 10 n.2.  *Adler* involves a discussion of the

negligence standard of liability, applied to a hostile work environment created by co-employees. 144 F.3d at 673.

In order to establish its affirmative defense, therefore, Defendant must follow the two-prong test developed in *Faragher* and *Ellerth*, which has been adopted, without modification, by the Tenth Circuit.  *See, e.g., Helm v. State of Kansas*, 656 F.3d 1277, 1285 (10th Cir. 2011); *Cadena v. Pacesetter Corp.*, 224 F.3d 1203, 1208 (10th Cir. 2000); *compare Chapman v. Carmike Cinemas*, No. 08-4043, 2009 U.S. App. LEXIS 432, at *15 (10th Cir. Jan. 12, 2009) (declining to adopt the modified affirmative defense applied in *McCurdy v. Ark. State Police*, 375 F.3d 762, 772 (8th Cir. 2004)) *with* Def.'s Mot. 10 n.2.

    2.    <u>Defendant cannot prove both elements of its affirmative defense</u>

<u>Element 1</u>:  Defendant did not take reasonable care in both preventing and promptly correcting the sexually harassing behavior.

    *a.    Prevention: Defendant's policy*

Although Plaintiff-Intervenor received an employee handbook that contains a sexual harassment policy and watched an orientation video,[2] Plaintiff-Intevenor disputes whether Defendant's policy effectively prevents sexual harassment.[3]  Def.'s Mot. 5.

In determining whether an anti-harassment policy, at a minimum, is facially effective, the Tenth Circuit has referred to the list of essential elements set forth by the U.S. Equal Emploment

---

[2] Defendant incorrectly states that Plaintiff-Intervenor received its handbook in 2007.  Def.'s Mot. 12.  Although she did receive a handbook when she was hired in 2006, she did not have a copy when she was rehired in 2007. *Compare* Def.'s Mot. 12 *with* Def.'s Mot. Ex. 8 (Portillo Dep. 17:10-21, as amended).

[3] Defendant mischaracterizes the extent to which it reviews and trains on sexual harassment during its initial orientation.  Def.'s Mot. 11-12, 18-19.  Defendant's sexual harassment policy is one paragraph among numerous pages of documents provided upon the initial hiring of employees.  Def.'s Mot. Exs. 1 & 9; Pl-Int.'s Ex. A (Portillo Dep. 22:7-9; 23:4-9).  The 14-minute video it purports to show to new hires includes two to three short sentences about sexual harassment.  Pl-Int.'s Ex. K (A. Reyes Aff. ¶¶ 4-5).

Opportunity Commission. *Anderson v. Wintco, Inc.,* No. 08-6074, 2009 U.S. App. LEXIS 3736, at *7-8, (10th Cir. Feb. 24, 2009) (citing *EEOC, Enforcement Guidance: Vicarious Employer Liability for Unlawful Harassment by Supervisors*, § V.C.1 (June 18, 1999)).  On this list there are three essential elements that Defendant has failed to include in its policy:  (1) protection from retaliation; (2) confidentiality of harassment complaints (to the extent possible); and (3) accessible avenues of rendering complaints for all employees.  *Compare* Def.'s Mot. Ex. 1 *with Anderson*, 2009 U.S. App. LEXIS 3736, at *7-8.

A simple review of Defendant's policy shows that protection from retaliation and confidentiality are nowhere within its contents.  Def.'s Mot. Ex. 1.  Courts have declined to find that an employer exercised reasonable care in seeking to prevent harassment when its sexual harassment policies, among other things, lacked anti-retaliatory and/or confidentiality provisions. *See, e.g., Miller v. Woodharbor Molding & Millworks, Inc.*, 80 F. Supp. 2d 1026, 1030 (N.D. Iowa 2000) (finding an employer's policy to be woefully inadequate, in part because it failed to include an anti-retaliation provision); *Thomas v. BET Soundstage Restaurant*, 104 F. Supp. 2d 558, 566 (D. Md. 2000) (holding that an employer's policy was insufficient as a matter of law, when, among other things, it was silent as to any prohibition against retaliation or guarantees of confidentiality).

For Defendant's Spanish-speaking employees, Defendant's policy also lacked a process with accessible avenues to render complaints.  Def.'s Mot. Ex. 1.  Complaints may be given to "your supervisor, the Office Manager, or Lynn McCullough."  *Id.*  While disputed, Gaytan testified that the majority of the warehouse employees are Spanish speaking and that he speaks in Spanish to these employees.  Pl.-Int.'s Ex. C (Gaytan Dep. 154:5-20).  For these employees, in

order to make a complaint under the policy in Spanish, the only option was to speak with

Gaytan.[4]  At best, employees might request the assistance of a bilingual co-worker, but they

suffer the peril involved in guessing whether that person will be capable of conveying the details

of their complaint, in addition to maintaining confidentiality.[5]  A facially effective anti-

harassment policy "offers a flexible reporting process that provides multiple avenues for

complaints to be made." *Anderson*, 2009 U.S. App. LEXIS 3736, at *7.  A policy against

harassment that includes no assurance that a harassing supervisor can be bypassed in the

complaint process is unreasonable as a matter of law.  *Faragher*, 524 U.S. at 808-09.  Here,

Defendant's policy does not provide multiple avenues for Spanish-speaking workers to file a

complaint, nor a way to do so in a confidential manner.

> b.       *Correction: Defendant's failure to enforce its policy*

An employer with a facially sufficient policy may still be found liable based on a lack of

reasonable care if it fails to promptly correct harassment claims or otherwise enforce its policy.

The "mere promulgation and dissemination of an adequate sexual harassment policy does not, by

itself, establish that the employer acted reasonably to remedy any harassment that occurred

despite the reasonable preventative measures." *Helm*, 656 F.3d at 1290; *Anderson*, 2009 U.S.

App. LEXIS 3736, at *9.  Since Defendant's policy was not effectively enforced, it has no

defense.

---

[4] Gaytan was the only Spanish-speaking supervisor who could receive a complaint.  Def.'s Mot. Ex. 27 (Salazar Dep. 62:21-63:2); Pl.-Int.'s Ex. B (J. Hazard Dep. 17:19-20; 179:10-17); Pl.-Int.'s Ex. D (D. Hazard Dep. 13:20-25). Gaytan interprets at the majority of Defendant's safety meetings.  Pl.-Int.'s Ex. D (D. Hazard Dep. 131:25-132:9). Lynn McCullough is not readily accessible to employees on a day-to-day basis.  Pl.-Int.'s Ex. L (McCullough Dep. 24:2-4).

[5] Defendant's own training video reveals the problems associated with inaccurate translations.  A direct translation of the sexual harassment portion of the Spanish video states: "This company does not want sexual abuse in the work. Included in this, there should not to have a duty [sic] físical [sic] abuse, sexual favors, and to be abuse [sic] of a person of your sex."  Pl.-Int.'s Ex. K (A. Reyes Aff. ¶ 5).

(i)      Defendant failed to investigate Plaintiff-Intervenor's complaint in good faith, as it was quick to conclude that her complaint was unsubstantiated.  When Plaintiff-Intervenor first reported that Gaytan had turned off the lights and attacked her near the time clocks, she was promptly instructed by Office Manager, Jennie Hazard, not to tell anyone else about what had happened and was further warned about committing slander.  Def. Mot. Ex. 8 (Portillo Dep. 65:12-24); Def.'s Mot. Ex. 13 (Portillo Aff. 6/10/08 ¶ 9); Pl.-Int.'s Ex. B (J. Hazard Dep. 66:13-16).  Both Dan and Jennie Hazard were quick to assume that Plaintiff-Intervenor was simply "lying."  Pl.-Int.'s Ex. B (J. Hazard Dep. 241:9-11); Pl.-Int.'s Ex. D (D. Hazard Dep. 89:4-12).  Defendant did not otherwise review Gaytan's personnel file to see if there were prior similar complaints made against him.  Pl.-Int.'s Ex. B (J. Hazard Dep. 210:18-22).  Nor did Defendant seemingly interview any witnesses.  *Compare* Pl.-Int.'s Ex. M (Vasquez Aff. ¶¶ 4-5) *with* Pl.-Int.'s Ex. D (D. Hazard Dep. 69:25-70:10), *and* Def.'s Mot. 13.  In regard to the video surveillance tapes Defendant purports to have reviewed, there are a number of issues that remain contested, such as whether the correct tapes were actually viewed and whether Defendant acted reasonably in disposing of the tapes instead of preserving them as part of the investigation.[6]  Finally, Plaintiff-Intervenor disputes that she was ever provided with the results of any such investigation into her complaint.  Pl.-Int.'s Ex. N (Portillo Aff. 1/20/12 ¶¶ 8-9).  "An employer's failure to fully investigate a complaint supports a finding that its response was inadequate."  *Wilson v. Tulsa Junior Coll.*, 164 F.3d 534, 543 n.7 (10th Cir. 1998).

(ii)      Defendant did not take reasonable remedial measures after receiving

---

[6] It is doubtful that a review of the tapes would have even supported Defendant's conclusion that Plaintiff-Intervenor was "lying," given that Dan Hazard testified that it is not possible to see anything on the surveillance tapes of the inside of the warehouse once the lights are turned off.  Pl.-Int.'s Ex. D (D. Hazard Dep. 80:21-25).

Plaintiff-Intervenor's complaint.  Defendant did not require Gaytan to attend any training or to review its sexual harassment policy and/or any other literature regarding sexual harassment.  Pl.-Int.'s Ex. B (J. Hazard Dep. 237:7-9); Pl.-Int.'s Ex. C (Gaytan Dep. 166:7-18) Pl.-Int.'s Ex. D (D. Hazard Dep. 88:7-89:3).  Nor did Defendant reprimand or discipline Gaytan in any manner.  Pl.-Int.'s Ex. O at 3-4 (Def.'s Response No. 2); Def.'s Answer Pl.-Int.'s Compl. ¶ 25 (Doc. 16); Def.'s Answer Am. Compl. ¶ 22 (Doc. 15).  Gaytan did not even receive a written or oral warning, as was Defendant's standard practice when employees other than Gaytan committed any type of infraction.  Pl.-Int.'s Ex. B (J. Hazard Dep. 41:2-42:25, 217:13-18); Pl.-Int.'s Ex. C (Gaytan Dep. 129:14-130:18, 166:19-21); Pl.-Int.'s Ex. D (D. Hazard Dep. 88:7-89:3).  In *Baty v. Willamette Indus.*, the Tenth Circuit found that the employer's failure to discipline any employees, even minimally, amounted to a sham investigation.  172 F.3d 1232, 1242 (10th Cir. 1999).  While disciplinary action is not always required, it "obviously is relevant" to the analysis of whether the employer's response is adequate.  *Id.* at 1242-43.

(iii)    The insufficiency of Defendant's remedial actions must also be assessed in light of its previous notice of Gaytan's harassing propensities and the demonstrated inadequacy of doing nothing to deter him.  *Mikels v. City of Durham*, 183 F.3d 323, 331 (4th Cir. 1999) (discussing how the remedial course of action of a written reprimand and warning, direction to seek counseling, and an advisement to limit contact with female employees was a "sham" given the employer's notice of the harasser's past conduct); *see also Cadena*, 224 F.3d at 1208-9 (affirming jury finding that employer failed to take reasonable care to correct the behavior, given the employer's knowledge of the offender's past harassing behavior).  Defendant failed to consider prior sexual harassment complaints rendered against Gaytan in determining whether to

take remedial measures or disciplinary actions against Gaytan.  Pl.-Int.'s Ex. D (D. Hazard Dep. 161:8-11).  Prior to Plaintiff-Intervenor's complaint, Defendant received a complaint in 2004 from Tina Reyes about Gaytan exposing his genitals and "playing with himself."  Pl.-Int.'s Ex. D (D. Hazard Dep. 146:24-147:2, 147:18-20); Def.'s Mot. Ex. 5.  Prior to Plaintiff-Intervenor's complaint, Leanda Villalba complained to Defendant about Gaytan's sexually inappropriate conduct.  Pl.-Int.'s Ex. F (Villalba Dep. 29:19-30:16, 67:7-14, 69:11-20); Pl.-Int.'s Ex. P (Villalba Aff. ¶¶ 6-7); Pl.-Int.'s Ex. D (D. Hazard Dep. 8:7-8).  Gaytan was not disciplined in response to either of these complaints.[7]  Pl.-Int.'s Ex. C (Gaytan Dep. 129:14-130:18, 139:12-18).  Instead, he was promoted to Assistant Warehouse Manager and received annual bonuses and substantial raises to his base rate salary, which increased from $39,000 in 2004 to $62,360.25 in 2009.  Pl.-Int.'s Ex. C (Gaytan Dep. 16:17-17:19, 19:1-20:23, 22:15-24, 23:2-23, 24:11-13).

      (iv)     Defendant's remedial actions against other employees belie that its failure to take action against Gaytan was because Plaintiff-Intervenor's complaint was unsubstantiated.  Defendant has promptly taken remedial measures through acts of discipline, even when such employee complaints were unsubstantiated.  Several employees received written warnings for unsubstantiated allegations of unwanted touching and advances toward female employees.  Def.'s Mot. Ex. 30 (D. Hazard Dep. 140:17-141:21); Def.'s Mot. Ex. 31 at 1, 3-4; Def.'s Mot. Ex. 32 at 1-2.  On other occasions, Defendant issued warnings to employees based on allegations of even less severe harassing behavior.  Pl.-Int.'s Ex. D (D. Hazard Dep. 43:6-13, 57:12-58:5);

---

[7] Dan and Jennie Hazard met with Tina Reyes and Gaytan about her complaint, but soon focused on Gaytan's offers to help "pop" her back.  Both were warned that such conduct was unprofessional and that either would be terminated if it continued.  Def.'s Mot. Ex. 5; Pl.-Int.'s Ex. D (D. Hazard Dep. 154:17-24).

Def.'s Mot. Ex. 31 at 2; Def.'s Mot. Ex. 32 at 1.  One of these employees, for example, was provided with a written warning, stating that sexual harassment is a "serious offense," "will not be tolerated," and that a copy of "title VII of the civil right [sic] act of 1964 is attached."  Def.'s Mot. Ex. 32 at 2.

        (v)      In addition to failing to take any action against Gaytan or subject him to further training on sexual harassment after receiving Plaintiff-Intervenor's complaint, Defendant did not take sufficient action to prevent the offending conduct from reoccurring.  When Plaintiff-Intervenor first complained, Dan Hazard told her to stay away from Gaytan.  Def.'s Mot. 13; Def.'s Mot. Ex. 8 (Portillo Dep. 69:17-19, 70:3-8).  After Defendant conducted its investigation, it never talked to Plaintiff-Intervenor about the results of the investigation.  Pl.-Int.'s Ex. N (Portillo Aff. 1/20/12 ¶¶ 8-9).  While Defendant alleges that it took "corrective action" by formally transferring the supervision of Plaintiff-Intervenor to Dan Hazard, Plaintiff-Intervenor disputes that she was ever transferred to Dan Hazard's supervision.[8]  Def.'s Mot. 13; Def.'s Mot. Ex. 8 (Portillo Dep. 69:17-70:12).  Further, given the nature of the warehouse's open layout and Gaytan's responsibility for her coworkers and the equipment on the floor, it was also not feasible for Plaintiff-Intervenor to stay away from Gaytan.  Pl.-Int.'s Ex. N (Portillo Aff. 1/20/12 ¶¶ 6-7).  After she complained, Plaintiff-Intervenor worked in the same area, in close proximity to Gaytan, who continued to give instructions to her.[9]  Pl.-Int.'s Ex. A (Portillo Dep. 73:14-17, 111:5-112:13); Pl.-Int.'s Ex. N (Portillo Aff. 1/20/12 ¶¶ 6-7).  The steps Defendant took,

---

[8] In addition to never having been told that Dan Hazard would directly supervise her, Plaintiff-Intervenor disputes that such a change in supervision was even plausible.  Dan Hazard would not have been able to communicate with her to the extent necessary to provide day-to-day supervision due to the fact that Dan Hazard cannot speak Spanish and she cannot speak English.  Pl.-Int.'s Ex. D (D. Hazard Dep. 13:20-25; 16:18-17:4; 39:12-15); Def.'s Mot. 11 n.4.

[9] Dan Hazard testified that Gaytan predominantly supervised the machine operators.  Pl.-Int.'s Ex. D (D. Hazard Dep. 191:20-192:4, as amended).

therefore, put the onus upon Plaintiff-Intervenor to avoid sexual harassment, but did not reasonably protect her from the reoccurrence of offending conduct. *Baty*, 172 F.3d at 1243.

(vi)    Defendant's failure to take remedial action against Gaytan in response to Plaintiff-Intervenor's complaint permitted harassment to continue, indicating that its "corrective action" was not reasonably calculated to end the harassment.  Class members testified about Gaytan's continued sexual harassment after Plaintiff-Intervenor left Spud Seller.  Pl.-Int.'s Ex. F (Villalba Dep. 29:19-30:16, 44:18-25); Pl.-Int.'s Ex. J (Cisneros Dep. 34:4-7, 51:13, 55:9-56:1, 58:8-21); Pl.-Int.'s Ex. I (Gomez Dep. 44:8, 46:8-10, 46:15-21, 50:8-9, 50:17-18); Pl.-Int.'s Ex. Q (Salazar Dep. 28:1-4, 28:9-10, 29:25-30:5); Pl.-Int.'s Ex. R (Marquez Dep. 49:25-50:5, 53:16-22).  Further, Plaintiff-Intervenor only remained employed by Defendant for two weeks after rendering her complaint to Defendant, because Defendant's "corrective action" was so lacking. Pl.-Int.'s Ex. A (Portillo Dep. 73:18-20, 110:8-111:9, 112:4-13).  The fact that she was not subject to sexually harassing conduct during these two weeks is hardly "decisive" proof that Defendant's "corrective action" was effective, especially in light of numerous class members testifying that Gaytan continued to harass them after Plaintiff-Intervenor's departure. Def.'s Mot. 14-15.  A jury, therefore, could reasonably conclude that the actions taken by Defendant were not calculated to correct sexually harassing behavior.

Element 2:  Plaintiff-Intervenor can show that she did take advantage of any preventative or corrective opportunities provided by the employer.

Defendant does not argue otherwise.  Def.'s Mot. 12-13.  Even if Defendant were able to show that it had exercised reasonable care as required by the first element of the affirmative defense, its defense must necessarily fail because it has not met the second requisite element of

the affirmative in showing that Plaintiff-Intervenor failed to take prompt action or to avoid the harm.  *Chapman*, 2009 U.S. App. LEXIS 432, at *15-16; *Harrison v. Eddy Potash*, 248 F.3d 1014, 1026 (10th Cir. 2001).

**C.     In the Alternative, Plaintiff-Intervenor Can Establish Defendant's Liability for Constructive Discharge**

1.     <u>Burden of proof and elements</u>:

Defendant has correctly stated the basic elements for constructive discharge.  Def.'s Mot. 9-10.  The Tenth Circuit has held that "'[a] resignation will be involuntary and coerced when the totality of the circumstances indicate the employee did not have the opportunity to make a free choice.'"  *Yearous v. Niobrara Cnty. Memorial Hosp.*, 128 F.3d 1351, 1356 (10th Cir. 1997) (quoting *Parker v. Bd. of Regents of Tulsa Jr. Coll.*, 981 F.2d 1159, 1162 (10th Cir. 1992)).  In particular, courts have identified four factors to consider in deciding whether there was a constructive discharge: (1) whether the employee was given some alternative to resignation; (2) whether she understood the nature of the choice she was given; (3) whether she was given a reasonable time in which to choose; and (4) whether she was permitted to select the effective date of resignation.  *Narotzky v. Natrona Cnty. Mem'l Hosp. Bd. of Trustees*, 610 F.3d 558, 565-66 (10th Cir. 2010).

Defendant, however, does not address whether Plaintiff-Intervenor's constructive discharge constituted a tangible employment action.  When a supervisor's official act precipitates the constructive discharge, it constitutes a tangible employment action and no *Faragher/Ellerth* affirmative defense is available to Defendant.[10]  *Compare Pa. State Police v. Suders*, 542 U.S.

---

[10] If no tangible employment action is found, but Plaintiff-Intervenor is otherwise able to show that she was constructively discharged, this claim effectively merges with her claim for vicarious liability in Section A.  In that

129, 148-49 (2004) *with* Def.'s Mot. 10 n.2.

2.   <u>Disputed issues of material fact exist as to whether Plaintiff-Intervenor was constructively discharged</u>

<u>Element 1</u>:  Defendant engaged in illegal discrimination.

Defendant essentially concedes that the record is replete with facts that would support a hostile work environment.[11]  Def.s' Mot. 2.

<u>Element 2</u>:  Aggravating factors beyond the hostile work environment made Plaintiff-Intervenor's working conditions intolerable.

Defendant's official acts and omissions, which favored Gaytan and failed to respond to employee complaints of sexual harassment, created an intolerable hostile work environment.  As discussed above in section B.2.b.iii.-iv., Defendant largely failed to address past complaints of harassment against Gaytan, while it took decisive action against employees for similar or less severe conduct.

<u>Element 3</u>:  A reasonable person in Plaintiff-Intervenor's position would feel that she had no free choice such that she was compelled to resign.

In *Baker v. Echostar Comm'cns Corp.*, the plaintiff, who had been subject to sexually harassing conduct, was led to believe that something would be done about the harassment, although the employer, in reality, did nothing.  No. 06-cv-01103-PSF-BNB, 2007 U.S. Dist. LEXIS 89111, at *18-19 (D. Colo. Dec. 4, 2007).  The court stated that a jury could find that given such working conditions, "such employer responses were so intolerable that a reasonable

---

context, constructive discharge solely operates as an issue of damages related to back pay.

[11] Both *Bolden* and *Penry* can be distinguished from the instant case because the court failed to find that the record supported a hostile work environment, such that the conditions could not be sufficiently intolerable to force the resignation of an employee.  *Compare* Def.'s Mot. 9-10, 15 *with Bolden v. PRC Inc.*, 43 F.3d 545, 552 (10th Cir. 1994), *and Penry v. Federal Home Loan Bank of Topeka*, 155 F.3d 1257, 1263 (10th Cir. 1998).

person in plaintiff's position would feel compelled to resign." *Id.* at *19.  As discussed above in Section B.2.b.i., after Plaintiff-Intervenor reported the harassing conduct, Defendant failed to carry out a good-faith investigation of her complaint not only by telling her to remain silent about her complaint, but also by failing to provide her any information about the results of her complaint.  Defendant also failed to take any sort of remedial action against Gaytan and placed the burden on Plaintiff-Intervenor to stay away from Gaytan, as described above in section B.2.b.ii. & v.  Plaintiff-Intervenor states that Gaytan continued to give her instructions and Gaytan remained a supervisor at the warehouse of all her coworkers.  *Compare* Def.'s Mot. 15 *with* Pl.-Int.'s Ex. N (Portillo Aff. 1/20/12 ¶¶ 6-7).  In *Exum v. U.S. Olympic Comm.*, the employer had "provided him with alternatives to quitting and offered to investigate his complaints."  389 F.3d 1130, 1136 (10th Cir. 2004).  In contrast, Defendant neither provided Plaintiff-Intervenor with any real alternatives to quitting, nor conducted a good-faith investigation.  Plaintiff-Intervenor, therefore, did not have the opportunity to make a "free choice" other than to resign.  *Id.* at 1135.

Defendant argues that since Gaytan stopped harassing Plaintiff-Intervenor after her complaint, Def.'s Mot. 15, Defendant did not make her working conditions intolerable.  As discussed in section B.2.b.v., however, Plaintiff-Intervenor states that she continued to work in the same area in close proximity to Gaytan, and that Gaytan continued to direct her work, even after she complained.  Gaytan may not have sexually harassed Plaintiff-Intervenor during the two weeks she remained on the job after complaining; however, she could not be expected to wait around until the next time she was sexually assaulted by Gaytan.  An employee in Plaintiff-Intervenor's situation could reasonably be expected to harbor apprehension about continuing to

work with Gaytan under these circumstances.[12]  *Martin v. Sears, Roebuck & Co.*, No. 08-cv-01998-MSK-KMT, 2009 U.S. Dist LEXIS 114548, at *43 (D. Colo. Dec. 7, 2009) (finding that a reasonable fact finder might conclude that an employee's only remaining option was resignation after an employer's failure to promise some sort of protection when the employee sought some indication that steps would be taken to protect her from another assault).

**D.      In the Alternative, Defendant Is Liable for Negligently Failing to Respond to the Hostile Work Environment Created by its Supervisor.**

      1.      Burden of proof and elements:

Defendant briefly mentions employer liability under the "negligence theory," but does not recite the elements required to establish negligence.  Def.s' Mot. 4.  Plaintiff-Intervenor has the burden of showing that the employer: (1) had actual or constructive notice of the hostile work environment; and (2) failed to respond adequately to that notice.  *Davis v. U.S. Postal Serv.*, 142 F.3d 1334, 1342 (10th Cir. 1998); *Harrison, Inc.*, 112 F.3d at 1444.

Element 1:  Defendant had actual notice of the hostile work environment.

Defendant fails to address this element.  Def.'s Mot. 4-5, 14-15.  Regardless, Plaintiff-Intervenor can establish that Defendant had notice of the sexually harassing conduct by Gaytan. In December 2007, Plaintiff-Intervenor provided notice to Defendant about Gaytan's sexual harassment.  Def.'s Mot. Ex. 10.  As discussed above in section B.2.b.iii., Defendant had received complaints about Gaytan's sexually harassing behavior prior to Plaintiff-Intervenor's complaint.  Pl.-Int.'s Ex. D (D. Hazard Dep. 146:24-147:2, 147:18-20); Def.'s Mot. Ex. 5; Pl.-

---

[12] In support of its contention that she could not have felt compelled to resign, Defendant argues that Plaintiff-Intervenor was able to continue to do her job after the sexually harassing conduct.  Def.'s Mot. 15.  Not only should Plaintiff-Intervenor not be faulted for being a good worker, Pl.-Int.'s Ex. C (Gaytan Dep. 67:5-10), but her subjective state of mind is also irrelevant to this analysis.  *EEOC v. PVNF, L.L.C.*, 487 F.3d 790, 806 n.10 (10th Cir. 2007) (holding that an employee's desire to continue working despite conditions so intolerable is not controlling since the test for constructive discharge is objective).

Int.'s Ex. F (Villalba Dep. 29:19-30:16, 67:7-14, 69:11-20); Pl.-Int.'s Ex. P (Villalba Aff. ¶¶ 6-7).

    Element 2:  Defendant failed to respond adequately to this notice.

    In considering whether an employer has responded adequately, the court will consider "'the timing of the employee's complaint, the speed of the employer's response, and the gravity of the punishment relative to the alleged harassment.'"  *Tademy v. Union Pac. Corp.*, 520 F.3d 1149, 1166 (10th 2008) (quoting *Duncan v. Mgr., Dep't of Safety*, 397 F.3d 1300, 1310 (2005)). As discussed above in section B.2.b.i.-ii., while Defendant promptly initiated an investigation, the investigation was neither thorough nor timely in providing Plaintiff-Intervenor with results. More significantly, Defendant took no permanent remedial steps against the harasser. Defendant's actions, therefore, were not "reasonably calculated to end the harassment."  *Adler*, 144 F.3d at 676.

    Further, Defendant failed to respond adequately to the complaints against Gaytan prior to December 2007.  As discussed in section B.2.b.iii.-iv., Defendant had received prior complaints about Gaytan's sexually harassing behavior.  After Tina Reyes' complaint in 2004, beyond a meeting with the complainant and Gaytan, Defendant did not conduct an investigation.  Def.'s Mot. Ex. 5; Pl.-Int.'s Ex. B (J. Hazard Dep. 149:23–150:1); Pl.-Int.'s Ex. D (D. Hazard Dep. 160:23-161:2).  Both Dan and Jennie Hazard believed that Tina Reyes had fabricated the claim of sexual harassment.  Pl.-Int.'s Ex. B (J. Hazard Dep. 208:18-20).  Gaytan was never disciplined or required to receive more sexual harassment training as a result, and was even promoted shortly thereafter to Assistant Warehouse Manager.  Def.'s Mot. Ex. 5; Pl.-Int.'s Ex. C (Gaytan Dep. 16:17-17:14, 129:14-130:18, 139:12-18).  Tina Reyes, on the other hand, was disciplined

by Defendant for discussing her allegation of sexual harassment with coworkers, even though

Defendant failed to provide her with any opportunity to explain what happened before instituting

discipline.  Def. Ex. 6, Pl.-Int.'s Ex. D (D. Hazard Dep. 170:7-171:14).  Further, Defendant's

only response to Ms. Villalba's complaint was a "promise" to speak to Gaytan.  Pl.-Int.'s Ex. F

(Villalba Dep. 73:12-17).  Knowledge of prior harassment of other women can serve as sufficient

notice to hold an employer liable for harassing conduct of its employee. *Hirase-Doi v. U.S. W.

Comm'cns, Inc.*, 61 F.3d 777, 784 (10th Cir. 1995).  Here, Defendant was on notice that Gaytan

had engaged in harassing conduct prior to Plaintiff-Intervenor's complaint in December 2007.

Yet Defendant failed to adequately respond to these complaints, such that Gaytan continued to

harass other female employees, including Plaintiff-Intervenor.  Defendant, therefore, could be

found negligent because it failed to remedy a known hostile work environment.  *Davis*, 142 F.3d

at 1342.

**E.      Plaintiff-Intervenor Can Recover Punitive Damages.**

   1.      <u>Burden of proof and elements:</u>

Defendant properly recites the standard for awarding punitive damages in a Title VII

case, in which an employer acted with malice or reckless indifference to the federally protected

rights of an employee.   Def.'s Mot. 21; *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 534 (1999).

While Defendant also properly recites the burden of proof and elements required for an employer

to raise the affirmative defense to punitive damages for a vicarious liability claim, Defendant

incorrectly tries to apply it to Plaintiff-Intervenor's claim of negligence.[13]  Def.'s Mot. 22.

---

[13] The *Kolstad* defense is not available for a Title VII claim of negligence.  *Dodoo v. Seagate Tech., Inc.*, 235 F.3d 522, 531 (10th Cir. 2000).

To raise the *Kolstad* defense, "an employer must at least do the following:" (1) "adopt antidiscrimination policies," (2) "make a good faith effort to educate its employees about these policies and the statutory prohibitions" and (3) "make good faith efforts to *enforce* an antidiscrimination policy." *Cadena*, 224 F.3d at 1210 (emphasis in the original) (citations omitted).

     2.     <u>Defendant does not challenge Plaintiff-Intervenor's initial burden:</u>

Nowhere in its Motion does Defendant argue that Plaintiff-Intervenor has failed to meet its initial burden in establishing that Defendant engaged in discrimination "with malice or with reckless indifference to the federally protected rights" of Plaintiff-Intervenor. Regardless, as discussed above in sections B.2.i.-v., Plaintiff-Intervenor has established that Defendant was recklessly indifferent to Plaintiff-Intervenor's complaint of sexual harassment, especially in light of the past complaints by other female employees about Gaytan and the disciplinary action Defendant normally took against employees who engaged in discriminatory conduct.

     3.     <u>Defendant cannot meet all elements of the defense:</u>

<u>Element 2</u>: Defendant did not make a good-faith effort to educate its employees about its policy.

While Defendant did hand out a sexual harassment policy contained within its handbook, Defendant exaggerates the extent to which it educated its employees about the policy. Def.'s Mot. 23. The adoption of anti-discrimination policies is not sufficient to meet the good-faith standard, if the employer fails to educate employees about such policies. *See, e.g.*, *Derijk v. Southland Corp.*, 313 F. Supp. 2d 1168, 1178 (D. Utah 2003) (finding the lack of ongoing training to employees about its policy to undermine the *Kolstad* good-faith defense); *Rush v.*

*Speedway Buick Pontiac GMC, Inc.*, 525 F. Supp. 2d 1265, 1280 (D. Kan. 2007) (denying

judgment as a matter of law on the *Kolstad* defense because the record was unclear about the

nature and extent of the employer's efforts to educate and enforce its policies).  Two to three

sentences in a 14-minute orientation video could hardly be considered to be a good-faith effort to

educate employees about its policy.  *Compare* Pl.-Int.'s Ex. K (A. Reyes Aff. ¶¶ 4-5) *with* Def.'s

Mot. 18.  Defendant asserts that it conducted "trainings" annually at employee monthly

meetings, although many of the female employees involved in this lawsuit did not recall any

such "training" or even discussion about the sexual harassment policy during any monthly

employee meetings.  *Compare* Def.'s Mot. Ex. 8 (Portillo Dep. 94:24-95:2); Def.'s Mot. Ex. 19

(Cordova Dep. 68:14-17); Def.'s Mot. Ex. 23 (Guerrero Dep. 71:21-24); Def.'s Mot. Ex. 25

(Marquez Dep. 95:12-15); Pl.-Int.'s Ex. F (Villalba Dep. 97:2-4); and Pl.-Int.'s Ex. H (Atencio

Dep. 64:15-20); *with* Def.'s Mot. 19.  Further, the annual trainings consisted of nothing more

than reading the sexual harassment policy out of the employee handbook.  Pl.-Int.'s Ex. D (D.

Hazard Dep. 131:2-10).  The failure to train management how to handle sexual harassment

complaints also vitiates a claim that good-faith efforts have been made to educate its employees.

*Rush*, 525 F. Supp. 2d at 1280-81; *EEOC v. Mgmt. Hospitality of Racine, Inc.*, No. 10-3247,

2012 U.S. App. LEXIS 383, at *35-36 (7th Cir. Jan. 9, 2012).  Defendant conducted no special

training for its managerial employees who handled sexual harassment complaints.  Pl.-Int.'s Ex.

B (J. Hazard Dep. 7:20-25, 47:8-13, 252:2-6); Pl.-Int.'s Ex. D (D. Hazard Dep. 13:14-17, 197:9-

15,).  Nor did Gaytan, one of the few accessible supervisors who could receive such complaints,

seemingly have an understanding of the sexual harassment policy given his harassing conduct.

Defendant, therefore, cannot show as a matter of law that it educated its employees in good faith

about its sexual harassment policy.

Element 3: Defendant failed to make good-faith efforts to enforce its antidiscrimination policy after being made aware of Gaytan's sexually harassing behavior.

The Tenth Circuit has held that even if Defendant has "a strong non-discrimination policy and makes good-faith efforts to educate its employees about that policy and Title VII, a plaintiff may still recover punitive damages if she demonstrates the employer failed to adequately address Title VII violations of which it was aware." *Cadena*, 224 F.3d at 1210.  An employer can be found to have failed to adequately respond to complaints when it does not discipline or reprimand an employee despite being aware of his sexually harassing behavior. *Chavez v. Thomas & Betts Corp.*, 396 F.3d 1088, 1099 (10th Cir. 2005), *rev'd on other grounds*, *Metzler v. Fed. Home Loan Bank of Topeka*, 464 F.3d 1164 (10th Cir. 2006).  A "sham" investigation can contribute to the finding that punitive damages are warranted. *Baty*, 172 F.3d at 1245.  As stated above in section B.2.b.ii.-iii., Defendant did not conduct a good-faith investigation nor take any disciplinary action against Gaytan after Plaintiff-Intervenor reported his behavior, despite Defendant's previous notice of Gaytan's sexually harassing conduct.  Instead, Defendant told Plaintiff-Intervenor to avoid Gaytan, and it remains disputed that Plaintiff-Intervenor was transferred to Dan Hazard's supervision.  Def.'s Mot. Ex. 8 (Portillo Dep. 70:3-12);  Even a transfer of an employee away from her harasser, without any action taken against the harasser, can in part raise an issue of material fact as to an employer's good-faith effort to comply with Title VII. *Derijk*, 313 F. Supp. 2d at 1177-78.

Further, as discussed in section B.2.b.iii., prior to Plaintiff-Intervenor's complaint, Defendant had failed to act on complaints of sexual harassment against Gaytan. *Schmidt v.*

*Medicalodges, Inc.*, 492 F. Supp. 2d 1302, 1312 (D. Kan. 2007) (finding that the failure to act on two previous complaints of sexual harassment against the same employee, even when disciplinary action was eventually taken, was sufficient to raise an issue of fact as to the employer's good-faith efforts to enforce its antidiscrimination policy).  In fact, the record belies Defendant's assertion that it "consistently [took] action to enforce its policies and procedures," because Defendant enforced its Title VII policies against other employees while turning a blind eye to Gaytan's indiscretions.  *Compare* Def.'s Mot. 24 with § B.2.b.iv.  In light of Defendant's overall failure to act with respect to complaints raised against Gaytan, Defendant has not made "good faith efforts to enforce an antidiscrimination policy."

WHEREFORE, Plaintiff-Intervenor respectfully requests that Defendant's Motion be denied because Plaintiff-Intervenor has shown that there remain disputes of material fact as to Plaintiff-Intervenor's claim of sexual harassment and to Defendant's affirmative defenses to vicarious liability and punitive damages.

Dated:  January 23, 2012

s/Jennifer J. Lee_____
Jennifer J. Lee
Jenifer C. Rodriguez
Linda Surbaugh
**Colorado Legal Services**
1905 Sherman Street, Suite 400
Denver, CO  80203
Telephone: (303) 866-9366
FAX: (303) 830-7860
E-mail: jlee@colegalserv.org
Attorneys for Plaintiff-Intervenor

## CERTIFICATE OF SERVICE

I hereby certify that on the 23rd day of January 2012, I electronically filed the foregoing

Plaintiff-Intervenor's Response to Defendants' Motion for Summary Judgment using the

EM/ECF system which will send notification of such filing to the following e-mail addresses:

Daniel R. Satriana , Jr.     satrianad@csbattorneys.com, epsteini@csbattorneys.com,
kanes@csbattorneys.com

Iris Halpern     iris.halpern@eeoc.gov, karen.morrison@eeoc.gov,
kathy.wade@eeoc.gov, mary.oneill@eeoc.gov, rita.kittle@eeoc.gov,
rochelle.harris@eeoc.gov

Matthew Y. Biscan     biscanm@csbattorneys.com, kanes@csbattorneys.com,
swansons@csbattorneys.com

William Earl Moench     william.moench@eeoc.gov, karen.morrison@eeoc.gov,
kathy.wade@eeoc.gov, rita.kittle@eeoc.gov, rochelle.harris@eeoc.gov

s/Jenifer Rodriguez
Jenifer Rodriguez
**Colorado Legal Services**
1905 Sherman Street, Suite 400
Denver, CO  80203
Telephone: (303) 866-9366
FAX: (303) 830-7860
E-mail: jrodriguez@colegalserv.org
Attorneys for Plaintiff-Intervenor